IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY

LEWIS W. ARTHUR, JR.,

    Plaintiff,

v.                                  CIVIL ACTION NO.  2:14-CV-11504

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security,**

    Defendant.

### M E M O R A N D U M   O P I N I O N

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income under Title XVI of the Social Security Act.  This case is presently pending before the court on cross-motions for judgment on the pleadings.  Both parties have consented to a decision by the United States Magistrate Judge.

    Claimant, Lewis W. Arthur, Jr., filed an application for Social Security Income (SSI) on March 28, 2003.  The claim was denied initially on July 28, 2003.  There is no additional evidence indicating Claimant filed an appeal.  Thereafter, on June 30, 2004, Claimant protectively filed a Title II application for disability and Disability Insurance Benefits (DIB) and a Title XVI application for SSI.  The claims were denied initially on September 15, 2004, and on reconsideration on March 15, 2005.  There is no additional evidence indicating Claimant filed an appeal.

    On May 17, 2007, Claimant filed a Title II application for DIB.  On May 31, 2007, Claimant protectively filed a Title XVI application for SSI.  Both claims were denied initially on October 12, 2007.  There is no evidence that Claimant filed an appeal.  On March 25, 2009, Claimant protectively filed a Title XVI application for SSI.  The claim was denied initially on

September 2, 2009, and on reconsideration on January 15, 2010. Thereafter on January 22, 2010, Claimant filed a request for hearing. A hearing was held in front of an administrative law judge on October 26, 2010. On December 17, 2010, an unfavorable decision was issued. There is no evidence that Claimant requested further review of the decision.

On May 11, 2011, Claimant protectively filed an application for SSI, alleging disability[1] beginning March 15, 2002. The claim was denied initially on July 28, 2011, and upon reconsideration on December 8, 2011. Thereafter, Claimant filed a written request for hearing on December 20, 2011. On December 11, 2012, a video hearing was held. Claimant appeared in Beckley, West Virginia, and Administrative Law Judge H. Munday presided over the hearing from Charleston, West Virginia. Benefits were denied by order of ALJ Munday on January 15, 2013. The Appeals Counsel found no reason to review the ALJ"s decision and denied Claimant's request for review.

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920(a) (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the

---

[1] Claimant alleged disability due to pain in his back, neck, right hand, depression, anxiety attacks, blockage of main artery of neck, borderline disabilities and nerve condition. During the course of treatment, Claimant was treated for anxiety and depression and was diagnosed with borderline intellectual functioning. These impairments became part of Claimant's alleged disabilities.

claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.912(g)(2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the application date May 11, 2011 (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of C5-C6 and C6-C7 with neck pain, carotid artery stenosis of the right, major depressive disorder, generalized anxiety disorder and agoraphobia without history of panic disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 15). The ALJ then found that Claimant has a residual functional capacity for light work except he can only occasionally engage in the climbing of ramps and stairs, balancing, stooping, kneeling,

crouching and crawling. He should never engage in the climbing of ladders, ropes or scaffolds. He should have only occasional exposure to extreme cold, humidity and vibrations. He should have no more than occasional exposure to hazardous conditions including unprotected heights and moving machinery. The claimant's requirement to alternate between sitting and standing without being off task should be accommodated for during regularly scheduled breaks and lunch. In addition, Claimant is able to perform simple, routine tasks. He is limited to occasional contact with the general public and coworkers. Claimant is unable to work in proximity to others (Tr. at 17-18). As a result, Claimant cannot return to his past relevant work (Tr. at 24). Nevertheless, the ALJ concluded that Claimant could perform jobs such as housekeeping attendant, newspaper delivery, outside delivery activities and cafeteria attendant (Tr. at 25).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v.Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

### Claimant's Background

Claimant was born on June 15, 1970. He was 40 years of age at the time of filing his application on May 11, 2011. Claimant has work experience at a dye factory. According to Claimant's Work History Report, he also has work experience cleaning cars (Tr. at 261). On May 31, 2011, Claimant's Disability Report reflected that Claimant had attended special education classes in elementary school and completed 10th grade in 1987 (Tr. at 250-258). Claimant began receiving counseling at New River Health Associates in May 2011 (Tr. at 285).

### The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Administrative Law Judge (ALJ) abused her discretion when she failed to develop the record on whether Claimant suffered from a diagnosis of borderline intellectual functioning and failed to hold a "full and fair hearing" (ECF No. 13). Claimant asserts that the ALJ erroneously "attempted to draw adverse credibility inferences from trivial and irrelevant inconsistencies in the record."

Defendant asserts that Claimant's allegation of being in special educations classes was not credible because he had previously reported being in regular education classes in his previous benefit applications (ECF No. 16). Defendant asserts that the ALJ correctly gave little weight to the opinions of Claimant's treating psychiatrist, M.K. Hasan, M.D. (Tr. at 23). Further, Defendant asserts that Claimant worked jobs in the past at higher specific vocational performance (SVP) levels than a job which could be performed by a person with a borderline

intellectual functioning (BIF) impairment. Defendant stated that "Even if the non-severe BIF finding were error, it would be a harmless error at most given the ALJ's findings and the nature of [Claimant's] past work" (ECF No. 16).

In asserting that the ALJ failed to develop the record on whether Claimant suffered from borderline intellectual functioning, Claimant argues that the ALJ incorrectly gave little weight to the opinions of treating psychiatrist Dr. Hasan. In doing so, the ALJ held that Dr. Hasan's diagnoses were based only on Claimant's subjective complaints and that there was a lack of objective findings and psychological tests. Claimant asserts that the ALJ incorrectly found that he had not undergone counseling. (*Id.*)

## Discussion

The Commissioner's decision is not supported by substantial evidence. The ALJ held that the diagnosis of borderline intellectual functioning was a non-severe impairment by stating that there were no objective findings of record supporting the diagnosis. The ALJ similarly found that Claimant's diagnoses of depression, agoraphobia and anxiety were also based solely on Claimant's subjective complaints and not on psychological testing or objective findings, however, she found that Claimant suffers from these severe impairments.

In concluding that the record does not support a diagnosis of borderline intellectual functioning, the ALJ gave little weight to Claimant's treating psychiatrist, Dr. Hasan (Tr. at 23). As for the mental opinion evidence, the ALJ gave great weight to the opinions of Rosemary L. Smith, Psy.D., a reviewing state agency psychologist. (*Id.*) Ms. Smith conducted a Psychiatric Review Technique of Claimant's file on July 27, 2011. Ms. Smith stated that Claimant was not credible due to Claimant commenting that he "alleged being in special education classes" (Tr. at 379). Ms. Smith reported that Claimant asserted being in regular education classes in his previous disability applications.

As part of the Psychiatric Review Technique, Ms. Smith completed a Mental Residual Functional Capacity Assessment of Claimant (Tr. at 383-386). Ms. Smith derived from the evidence in Claimant's file that Claimant was moderately limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and, the ability to accept instructions and respond appropriately to criticism from supervisors (Tr. at 383-384). Ms. Smith concluded her assessment by stating that Claimant retains the ability to learn and perform simple, unskilled work-like activities in an environment that involves limited contact with others (Tr. at 385).

The ALJ also gave significant weight to the opinions of a state agency reviewing psychologist, Philip E. Comer, Ph.D. (Tr. at 23). On December 6, 2011, Dr. Comer reviewed Claimant's file and opined that Claimant was only partially credible, as he had given different statements concerning his education levels (Tr. at 416-431). After reviewing the evidence in Claimant's file, Dr. Comer found Claimant to be moderately limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without

7

an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and, the ability to accept instructions and respond appropriately to criticism from supervisors.

The evidence on record does not include a school transcript because records are not kept back to the date in which Claimant attended the school. The evidence of record includes a letter from the Fayette County Board of Education stating that they do not have records of special education students with birthdates prior to 1987 (Tr. at 260). The ALJ held that Claimant's report of being in special education classes in elementary school is not supported by objective evidence.

On January 16, 2012, the findings by Mary R. Powell, LICSW, included Claimant's estimated intelligence to be low (Tr. at 487). Ms. Powell reported that Claimant's memory was impaired and that he demonstrated a low fund of knowledge. Claimant's cognitive speed was decreased. Claimant demonstrated an impairment of abstract reasoning. Ms. Powell's psychiatric findings concluded that Claimant appeared tired and demonstrated no hypervigilance or heightened startle reflex. Claimant's attitude was guarded, but not defensive or evasive. Ms. Powell reported Claimant's mood as fearful and anxious. Claimant's affect was restricted. Ms. Powell stated that Claimant's rate of thought was abnormal because it was "slowed" (Tr. at 487). Ms. Powell reported Claimant's "Poverty of thought was observed" and that his insight was impaired. (*Id.*)

Treating Physician Analysis

In evaluating the opinions of treating sources, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927 (2014).

Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 416.1527(d)(2) (2014). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 416.1527(d)(2)(2014). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 416.1527. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization and (6) Various other factors. Additionally, the regulations state that the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* § 416.1527(d)(2). An ALJ may choose to give less weight to the opinion of a treating physician if there is persuasive contrary evidence.

In the present matter, the ALJ's decision does not contain a complete analysis of the aforementioned factors. The ALJ did not mention the length of the treatment relationships or the specialization of the opinions provided. Additionally, the ALJ did not explain why she found Dr. Hasan's opinion contained in the medical assessment form to be inconsistent with his progress

notes.

Furthermore, the ALJ's decision does not comply with the regulations dealing with the weight afforded a treating physician's opinion. 20 C.F.R. § 416.927(d)(2)(2014). Claimant's treating psychiatrist, Dr. Hasan, treated Claimant from approximately May of 2011 to at least June of 2012. On December 22, 2011, March 22, 2012, June 21, 2012, Dr. Hasan assessed Claimant to have borderline intellectual functioning (Tr. at 484). Reviewing psychologist, Dr. Comer, completed a Mental Residual Functional Capacity Assessment of Claimant on December 6, 2011. Reviewing psychologist, Ms. Smith, completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form on Claimant on July 27, 2011. Dr. Comer and Ms. Smith's opinions were based only upon review of Claimant's case file instead of in person ongoing treatment like Dr. Hasan.

The ALJ gave more weight to reviewing physicians than to Claimant's treating physician. The ALJ gave little weight to treating psychiatrist, Dr. Hasan, because his opinion was allegedly based on Claimant's self-reporting, however, the ALJ relied on Claimant's self-reporting to find the Claimant suffers from the severe impairments of depression, agoraphobia and anxiety. The ALJ contradicted herself by relying on Claimant's self-reporting to find that Claimant suffers from the severe impairments of depression, agoraphobia and anxiety while finding that he does not suffered from BIF based on Claimant's self-reporting. Although the ALJ held that Dr. Hasan's diagnosis of BIF was incorrect, she failed to rely on objective evidence to support the finding that Claimant does not suffer BIF.

Duty to Develop

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to

determine disability and information is needed to reach a determination. 20 C.F.R. § 912.

Defendant asserts that the ALJ properly noted that the record contained no standardized intelligence testing or education records (ECF No. 16). Dr. Hasan diagnosed Claimant with BIF although his report did not contain an IQ score. The Code of Federal Regulations for 12.00 listings of mental disorders states the following:

> 6. *Intelligence tests.*
> a. The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.
> b. Standardized intelligence test results are essential to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A. Listing 12.05A may be the basis for adjudicating cases where the results of standardized intelligence tests are unavailable, e.g., where your condition precludes formal standardized testing.
> c. Due to such factors as differing means and standard deviations, identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. The IQ scores in 12.5 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores. In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.
> d. Generally, it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities. However, in special circumstances, such as the assessment of individuals with sensory, motor, or communication abnormalities, or those whose culture and background are not principally English-speaking, measures such as the Test of Nonverbal Intelligence, Third Edition (TONI-3), Leiter International Performance Scale-Revised (Leiter-R), or Peabody

>    Picture Vocabulary Test -- Third Edition (PPVT-III) may be used.
>    e.    We may consider exceptions to formal standardized psychological testing when an individual qualified by training and experience to perform such an evaluation is not available, or in cases where appropriate standardized measures for your social, linguistic, and cultural background are not available. In these cases, the best indicator of severity is often the level of adaptive functioning and how you perform activities of daily living and social functioning.

The results of intelligence tests are only part of the overall assessment for a BIF impairment. Although intelligence test scores are part of the diagnosis, mental disorders regarding intellectual disabilities require findings of restrictions, difficulties and signs/symptoms. Dr. Comer and Ms. Smith found Claimant moderately limited in multiple activities, including some that demonstrate a mental disorder under the Listings. Therefore, Dr. Comer and Ms. Smith's opinions listed multiple limitations which support Claimant's position.

Additionally, as a treating psychiatrist, Dr. Hasan had an opportunity to observe and assess Claimant in multiple office visits. Claimant's counselor, Ms. Smith, also observed and assessed Claimant during office visits. Dr. Hasan's completed disability evaluation report for Claimant reflected his diagnosis of BIF. Because the report did not include a narrative as to how this diagnosis was reached, it does not demonstrate that a basis did not exist.

In *Cook v. Heckler*, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record and cannot rely on evidence submitted by the claimant when the evidence is inadequate."

Social Security Ruling ("SSR") 96-2p, states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

Claimant's treating physician's opinion and the consulting opinions were inconsistent with each other. The ALJ did not re-contact medical sources and gather additional information to develop the inadequate record. "In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination,…" 42 U.S.C.S. § 423(d)(5)(B). When the ALJ has failed to develop the record adequately, the court must remand the case to the Commissioner for further development. *See Pratts v. Chater*, 94 F.3d 34 (2nd. Cir. 1996). In the present matter, the ALJ failed to develop the record to adequately determine if Claimant has a BIF impairment.

Finally, the undersigned cannot find that the ALJ's decision was based upon review of all the evidence of record. The ALJ relied upon the opinions of Dr. Comer and Ms. Smith who both found Claimant lacking credibility due to inconsistent statements about attending special education classes in elementary school. After the reviews by Dr. Comer and Ms. Smith, Claimant provided an explanation of being confused by the questions and not knowing until a few months prior to the administrative hearing on December 11, 2012, that the classes he attended in grade school were special education classes. It is possible that the opinions of Dr. Comer and Ms. Smith may differ upon reviewing this additional information. Reviewing opinions' determined Claimant's credibility on the basis that Claimant stated that he attended special education classes in elementary school when he did not mention it in his previous

disability applications. Therefore, the ALJ must seek clarifying information from the treating physician as to the basis of his determination that Claimant has a borderline intellectual functioning impairment.

Based on the above, the court concludes that this matter must be remanded for further administrative proceedings consistent with this memorandum opinion.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 13), is GRANTED, Defendant's Brief in Support of Defendant's Decision (ECF No. 16) is DENIED, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to provide copies of this ORDER to all counsel of record.

ENTER: March 31, 2015.

Dwane L. Tinsley
United States Magistrate Judge